Your Honor, the second case on the docket this morning is 2-24-0479 Barnes Electric Construction, Inc. v. Appellee v. Cross Appellee The Marsha L. Forsythe, individually, is the trustee of the Marsha L. Forsythe Living Trust, dated 8-26-01, defendant, appellate, and cross-appellee. Arguing now on behalf of the appellate and cross-appellee, Mr. Robert G. Black. Arguing now on behalf of the appellate and cross-appellate, Mr. Peter Swalwell. All right, Mr. Black, you may begin when ready. Thank you, Your Honor. May it please the Court, Counsel. Good morning again. My name is Bob Black and I represent the defendant and appellant in this matter. It's an old maxim, he who seeks equity must do equity. And that's what we believe this case is primarily about. Following a trial, the trial court ruled that the plaintiff had not proven a claim for breach of contract and that the mechanics lien claim had also failed. And in doing so, it ruled in no small part that this was because plaintiff engaged in billing that at least implied constructive fraud. It constituted more than honest mistakes, the Court said. There was double billing, there was billing submitted on the wrong projects, and critically, there was billing and advisement that could not be purchased by competent records or testimony. Yet, the trial court awarded $217,000 under the equitable theory of practical merit without considering plaintiff's own conduct, without considering whether plaintiff had unclean hands. And why is that so? Well, we know this because the Court said merely because it was not pled as an affirmative defense. And we can point to the record where the Court said that in denying a post-trial motion. The Court said, I do believe what you are trying to raise is an affirmative defense of unclean hands to defeat the equitable claim, but there's no unclean hands affirmative defense pled at any point. We believe this is wrong for several reasons. First off, we raise the cases of Seymour v. Collins out of the Illinois Supreme Court, People v. Bernard from this Court, that basically say that a court's failure to recognize its discretion and act upon that discretion is discretion, is an abuse of discretion. And what we have here is a situation where the Court said, well, I'm not going to consider it because it wasn't pled, but when there are instances that... But doesn't it say in your motion to reconsider, excuse me for an interruption, that I think my ruling, my written order makes clear why I think, even though I found constructive fraud, why I think it would be unjust not to award them any fees. Doesn't that reveal the use of its discretion? Even if we assume the trial court can sui sponte raise it. And so I guess, and I know you, you know, you're very clear in your briefs. You say, well, you know, come back then for a hearing on that. But what would be the point when the order seems to address the very issue of justice? Well, I'm not sure that it does, Your Honor. I don't think that's clear. I think, I mean, I hate to quibble with you, particularly when you're probably, you're much more conversant with the record than I am. But I think he either, Judge Jessica either says it would be unjust not to allow anything, or it is just to allow quantum merit. That's what I took from it. Absolutely. And the Court did say it would be unjust not to award him something that is part of the record. But the Court still said, I'm not going to consider anything that's an affirmative defense at all, because it was not pled. I mean, it was that simple for the trial court, and we don't believe it's that simple. And we cited the case particularly, you know, the second reason here that we think this is wrong, we cited the case here, Anderson v. Nelson, that we believe is very much on point. In Anderson, you know, here, let me backtrack for a second. First, generally speaking, an affirmative defense should be pleaded. Second, generally speaking, an unclean hands is an affirmative defense. Now, in Nelson, the Court first noted a myriad of decisions from other jurisdictions, both state and federal, that embrace the proposition that the unclean hands doctrine may be applied by a trial court sui stande, even if not raised by the parties. May. May. Which is a discretion. Correct. Or may not, right? Correct. But we're making the assertion that there is, there wasn't. The Court just cut it off and said, you didn't plead it, so that's it. It didn't give any indication or there was no indication of record that it considered that aspect. Does the Court have to articulate all its thoughts in determining, you know, look, this hasn't been raised, nobody's talked about it thus far, wasn't really brought up. You can't bring it in at the 11th hour and say, oh, by the way, don't you have all the records which would have allowed you to consider, hmm, maybe I should raise this. And I'll harken back to the Anderson decision. Okay. Okay. Because in the Anderson decision, excuse me, the court ruled that the fact that the party had an opportunity to respond to the court's application of the unclean hands doctrine during the proceedings on its post-trial motion was sufficient. And that's the same thing we have here. It was raised in the post-trial motion. It was specifically raised in terms of the unclean hands doctrine in the motion to reconsider. It raised the doctrine because the trial court had specifically found instances that appeared to be unclean hands behavior. So under those circumstances, however, the court, the trial court, stubbornly stuck to forfeiture and waiver and said because you didn't plead it, that's good enough, that's enough. Thank you. Thank you. And excuse me for interrupting again.  But to me, Anderson stands for it wasn't error to raise it sua sponte. But you've taken on more than that battle. You've said it was error not to raise it sua sponte. And I guess as long as I'm quibbling, I'll add that the court said we may affirm, even if we find the court error in raising unclean hands sua sponte, there was an alternative basis that the proponent didn't prove it by a preponderance. And we believe that aspect is also present here, that it's not proven by a preponderance. But I think that unclean hands, that's what I understood. Did it meet his burden of proving this claim by a preponderance? Well, and I don't think the court ever reached that point here because it didn't consider it any further. It just didn't bother once it found that the affirmative defense had not been pled. Could this court? Pardon? Could this court? I'm sorry. I'm not understanding the question. Could this court affirm, assuming we take your proposition that trial court can sua sponte, raise it, could we affirm on the alternative basis that it's insufficiently proved in the record? Well, I'm struggling with that one as we're talking about this, Your Honor, because I don't know what findings that we're talking about from the trial court that would have said it was insufficient. So, I mean, in that instance, we're almost talking about this court taking on the mantle of looking at the facts to determine if they are sufficient for unclean hands or not unclean hands. Well, if you had been successful raising it, you would have presented presumably evidence and argument. Did you make an offer of proof? Did you make any kind of a proffer to preserve the issue for us? No, there was no offer of proof made, Your Honor, to my recollection. It was- I'm sorry, not you, but to trial court. Right, trial court. You would have done the right thing. I'm sorry. There was no offer of proof made. It was raised in the post-trial motion just like in Anderson, and the fact is the trial court just wouldn't consider it because it had not been pled. And we're saying, you know, the court has that opportunity to go further. The court can consider it sua sponte to, you know, protect its own court integrity and not just say, no, didn't plead it, so I'm not going to consider it. It didn't go far enough. And, you know, we also raise the fact that, in my opinion, it may be amended at any time under 216C of the Code of Civil Procedure. Now, compounding this is going to the proofs. The trial court determined that the plaintiff did not state a cause of action for breach of contract because the plaintiff failed to prove sufficiently a time and materials contract. The court then said because you don't have a contract, you don't have a mechanics lien. And the court went further and said, well, even if that were not the case, the conduct that I see here in terms of the billing amounts to constructive fraud that would defeat any lien claim. And so our position is, of course, that the constructive fraud is an aspect of unclean hands that should have been fully considered. Now, the court raised various deficiencies that could not be explained away as an honest mistake. It talked about sloppy record keeping, duplicate charges, uncorroborated expenses, work on other sites or projects charged, charges for work performed on defendant's sister's home, lights were not delivered even though the invoice said they had been delivered. And the court noted that Robert Barnes' testimony for the plaintiff was confused and inconsistent. The court criticized that he had to be constantly led for his responses to solicit testimony. And because of that, because of this extensive lien, this seriously undercut Robert Barnes' credibility and recollection. But no one objected to those leading questions? Some were and some were not. That is true. And the court said even without objection, it still casts doubt upon his credibility. We noted that there were no charge orders or written documentation prepared or introduced that would show this additional work. Plaintiff did not keep them. Your Honor, yes. Plaintiff did not keep very formal organized records. I think the record is clear on that. The record keeping was all over the ward. The invoices he did send out after scrutiny revealed errors and inconsistencies and double charges, which my client raised to the plaintiff. And two, it seems to me what's egregious is the timing aspect. So in addition to the records not being kept properly or supported by timely and competent paperwork, plaintiff issued a 41-page invoice on May 5, 2020, claiming another $220,000 in unbuilt things for additional extras. But that period of time on that invoice ran for over three years, from April of 2017 to May of 2020. I think this inherently causes or creates great doubt about those invoices. I mean, consider if, as an attorney, you waited three years to bill somebody for three years' worth of time. I think that would be under close scrutiny to begin with. But along with this additional $220,000, the plaintiff sent out this final invoice that said the total amount now still owed was $365,000 and change, which is the amount of mechanics lien filed. I will note for the court, and I don't know why this is, the mechanics lien is at $365,000. The second-amended complaint is at $365,000, but the third-amended complaint says something about $417,000. And I'm not sure why that is, and I don't see how it was addressed at all. But anyway, the court did here find significant and inexcusable double billing, billing for work not performed on the house and work performed under different contracts, all claimed in that lien amount of $356,000. The court said that errors this prevalent and this pervasive cannot properly be characterized as simply honest mistakes, but smack of an attempt to improperly inflate the amount of the encumbrance. The court found by its own calculations that the lien amount was overstated by 60%. And I would raise whether the leverage I have here, if they are overstated by 60% and the court went line by line as it did, how is that the same thing, based upon the 60% and what it actually determined? The court just said the magnitude, numerosity, and open acknowledgement of our bounds of the impropriety of many of the items comprising the overstatement would compel the court to infer intent and find constructive fraud. So that's the defeat of the complaint. Now, we do note that, and the complaint does raise, that in denying the motion to consider, the court tried to pull back a little bit. And the court said, well, you know, I don't find constructive. I find constructive fraud was in the amount of the mechanics lien claim. It was not fraud or constructive fraud to have asserted a claim under the mechanics lien. I'm not sure of the difference. I'm not sure that I understand the difference. Fraud is fraud. And I'm not sure how we can make that kind of right-line distinction that you have the right to bring a claim, but because you bring a claim that is exorbitant, that can't be fraud because it was brought the right way. I just don't understand that comment. And, you know, I'm being very candid with this panel on that one. And I'm not being flippant when I say, is that really the issue here? Because I understood you raised that, at least in part in support of your argument, that the trial court erred in not giving you attorneys' fees. I have time to parse it. But I think, you know, the theory of the trial court seems responsive. It's that they weren't merited here because, although it was sloppy, double billing, et cetera, and insufficient to meet the strict standards required of the statutory lien, it is not sufficient to give fees under the Act. That was part of it. May I complete the thought? Yes. That was part and parcel of the Court's determination. And we raise this more from the fact that plaintiff cites this quote from the Court in its brief as being somehow determinative. And we don't believe it is determinative. We don't believe it. We don't give it that much weight. My time is up. I'll save the rest for a rebuttal. Thank you. Thank you, Your Honor. All right. And, Mr. Swan, you may begin when ready. Thank you. May it please the Court, Counsel Black, Peter Swan on behalf of Barnes Electric, appellee cross appellant. I don't think we got into all of the arguments raised by the appellant in this initial discussion. I'll just quickly state my situation against each argument. Obviously, preponderance of the evidence was not discussed. We talked more about discretion of the trial court. And I think it's definitely, from my standpoint, an abuse of discretion to allow a party to raise an affirmative defense after the trial is over. I mean, and I know that this was going to be an issue. I would have addressed it at trial. And now to come at the very end of the trial and say I want to raise unclean hands because I think the Court might have found bad billing. I think it's unfair to the plaintiff in this case. And I don't think it's an abuse of discretion. I think it happens all the time. If it happens all the time, if a late, 11-hour motion to amend to add an affirmative defense is generally denied, how is that an abuse of discretion? I mean, that's what courts do. They may not like it, but it is typical and it is proper. So I think on that basis alone, that's correct. Secondly, I don't think the record supports an unclean hands defense in this case at all. Understand how this happened. My client was a subcontractor to John Marshall Construction. Very happy to be a subcontractor, was getting paid by John Marshall. John Marshall was doing all this paperwork, and it came to a point in time where there was a lot of experts. There was the Brad side experts and there was the John Marshall side experts. And these were more of the initial contract. And John Marshall was doing all this paperwork, and he paid 15 percent to do this paperwork and to keep track of all these experts. And it was not my client's decision no longer to be a subcontractor. It was the owner's decision. He said, no, I don't pay this 15 percent. You work for me directly. And now the guy's trying to keep up with all these changes. And the court will know in this case, usually there's a set of plans, very specific plans and specifications, very true. There's none of this. This was being designed by designers, room by room, on the fly, changes. And my client had to keep up with these things. And over five years. The court's finding was that there was so much overbilling or billing for other projects that the court found constructive fraud in the context of the Mechanics Lien Act. So I think part of their argument is that that constructive fraud is unclean hands per se. Is there some difference? Yeah, there's a big difference. And I'll explain it. Constructive fraud, as it's defined in the Mechanics Lien Act by the case law, the Hartman case, Kordak case, it's a scienter. It requires scienter at a specific time. And that time is when you record the lien claim. If you had the requisite scienter to commit fraud, i.e., you knew you were not crediting payments that had been made, you knew that you were billing for other projects and trying to lump it in, or you just knew you were inflating your billing, that's scienter for fraud. And that's what the court's got to look at to determine constructive fraud. And in this case, that did not happen. There was no evidence of the record. In fact, when counsel for the defendant questioned my client regarding how did you come up with this lien claim amount, he brought right down the summary invoice and said, okay, you looked at it and you added up all these invoices and you added up the payments that were applied, and this is what it came out to be. Is that correct? Yes. And then you signed it. Is that correct? Yes. And you believe it. And he said, yes, I did. And that's the evidence in the case. There's no evidence that my client knew about any incorrect billing at the time he recorded his lien claim. He went right off his business records, which is typical. I would say typical. And there's no evidence of fraud. And that's what you would need to have constructive fraud to defeat a lien claim. And the lien act is very specific. It says just because you file a lien that's bigger than what you ultimately get by a trial, court, or by jury, that doesn't mean your lien's bad. It just means you didn't prove up all your lien claim. And that's what I really think we have in this case, and trial court stated that. We have a failure of proof. And why do you have a failure of proof? Because you have a contractor who was a subcontractor, had a contract, gets pulled out, now he's working for an owner under a non-written contract with unspecific scope of work, and some of it's being billed on a time and material, some of it's being billed on a bid basis. Because if you know what you can do and add 10 items, I can bid it. But if you don't know, you do it on a time and material basis. So I think that's what happened, and it did cause confusion. And look at some of the confusion. When my client calculated his lien claim, he incorrectly credited the owner $50,000 of payments that the owner had specifically earmarked for other invoices, wrote on a check what invoices they were to be paid for, and my client gave him a double credit of $50,000. If he's defrauding anyone, he's defrauding himself. He's not defrauding the owner. He's giving the owner $50,000 of undeserved credit. So, yeah, there is no constructive fraud as that word is defined and used in the Mechanics' Lien Statute and case law. Secondly, just going to that issue, I don't want to jump around too much. Another basis for denying Mechanic lien was the court found there was no express contract between the parties. And you can see why there was no express contract. You know, Barnes had worked for Marshall Pruitt's estate before, and when she pulled him out as a subcontractor, he just kept working for her. He didn't have a contract. He had a very bad choice of how to do business, but he just kept working for her. And so, yeah, there wasn't probably an express contract. But the Section 1 of the Mechanic Lien Act does not require that. Section 1 says you get a lien if you have an implied contract. The court found there was a quantum error recovery. That's an implied contract. So, therefore, the court can't say you don't get a Mechanic's Lien because there's no express contract, but I thought there was an implied contract. This is on your cross-appeal? This is. I'm jumping around, Judge. I apologize. Let me go back a little bit maybe on counsel's appellate arguments, and I'll just direct those again. You touched on the discretionary issue on unclean hands. We've talked about that. We've talked about the court not finding there was no just cause for recording the lien and, therefore, denying the request for attorney's fees. And I think the court needs to make that finding, that there was no just cause for filing this lien. The court said there was just cause for filing this lien. There's almost a quarter million dollars of unpaid legal expenses or electrical expenses. The third one is that the whole judgment is against the manifest way to the evidence. Well, I mean, they don't dig into the evidence in this case when making that argument. They just said, look at the court. The court found that there was bad billing and fraud, and, therefore, it's against the manifest way to the evidence. But manifest way to the evidence, in my opinion, if you're going to bring an appeal, you really can't just be preponderance of the evidence. You've probably got to prove that there's no evidence on this point to convince an appellate court to reverse a trial court because if you throw a court to granted, you know, they need to weigh the evidence. They need to weigh and see the credibility of the parties. We put evidence on each invoice that the court gave us that ruled in our favor. So there was evidence that the work was performed or performed in a reasonable manner, that the work was in place and was required and was ordered by either Marcia Forsyth or her agents. And so, therefore, there was evidence on each invoice. And it's up to the trial court to determine credibility and the weight. And, in my opinion, it's not this court's job to re-weigh the evidence. And they didn't really even try to dig into the evidence in their brief. They just relied on the trial court's rule. So I think that covers the appellant's arguments. I have five arguments, obviously. The first one is the $78,000 that the court did not discuss. After the final payment of $120,000 by Marcia Forsyth, there was a balance of the $78,000 plus change. The court said, I cannot get into this because I look at it, and there was $90,000-plus of electrical fixtures, and I don't know if these were ever delivered to the project. And there's this $107,000 of extras that I don't know what they're all about. So how can I come up and discuss this final balance of $78,000 when I don't know about these other charges? But that's not true. I mean, the record's very clear about what electrical fixtures were delivered and accepted by Marcia Forsyth. She did her own count. Exhibit 39 of the defendant's exhibits is her count, where she counts the lighting fixtures. The first charge was Exhibit 7 for $56,000-plus of lighting fixtures. So that was 200 3-quarter-inch cans. The second charge was Exhibit 49 for 100 2-inch cans. And in Exhibit 7, there was also 14 2-inch cans. So you had 200 3-quarter-inch cans, 114 2-inch cans, and that ended up to be the $99,000 that the court was talking about of cans, of lighting cans. And he's saying, well, they weren't delivered, and there's no evidence. Well, Exhibit 39 is the admission of the defendant that they received those cans, and they were in place, and she counted them. Second, my client testified that he installed them, so there's evidence there, and they were paid for by John Marshall. So John Marshall wouldn't be paying for installation of cans as a general contractor to a sub if they weren't installed. Marsha, of course, I may be— May I interrupt? If that's part of the John Marshall contract, then why does the appellant own it? She doesn't. That's why it wasn't even part of the trial, hardly, other than because she was in the accounting out once. It was paid for. We didn't sue Marshall Foresight for $99,000 of electrical lighting. That hadn't been paid for. But the current court somehow is mixing apples and oranges here and saying I can't look at the unpaid invoicing to Marshall Foresight because I don't know about this $99,000 of electrical lighting, and I don't know that it was ever delivered. Well, it was under another contract. Similarly, with the John Marshall site extras of $107,000, that was work that Marshall Foresight signed as a change order to John Marshall, specifically authorizing John Marshall and its subcontractor, BART, to do $107,000 of change orders. The work was done. John Marshall paid my client. And so I don't know why the trial court is looking to those items and saying, now I can't go any further on this invoice because I don't understand those earlier items. And then that gets me to Exhibit 12, Barnes Exhibit 12, which is the invoice for electrical extras where we said in a brief the exact time that Marshall Foresight is questioned regarding that invoice, and she goes line by line down that invoice and says, yes, I got this. No, I didn't get that. Yes, I got this. No, I didn't get that. These are the issues I'm contesting. And we're like, okay, we may object or disagree with your saying you didn't get some of these items, but you're admitting to getting the rest of them. Why didn't the trial court give us those $19,000 that is left there in Exhibit 12? And the reason is the trial court never got to it. It just said I'm not going to look at anything that adds up for the remainder of that invoice because I don't understand the beginning of it. So that's the first argument as we're trying to get that balance on Exhibit 12. I think I've touched on – Inferentially or implicitly, isn't the trial court complaining about a failure of proof then? It is. It's saying there's no proof, no proof of the electrical fixtures being delivered, no proof of what this $1,700 of electrical extras is all about. But what we're saying is, well, yeah, there is proof. There's abundant proof. It's a sign change order by Marshall Forsythe to John Marshall. John Marshall pays my client for that work. My client testifies he did that work. Abundant proof. Same with the light fixtures. Abundant proof because there's a count, admission by the defendant. Yes, I did get these light fixtures. And they were paid for. And so to say that I can't go any further on this invoice to the very end, to the balance, because I don't understand the beginning charges, and saying there isn't evidence of that beginning charges is incorrect. There's abundant evidence. So I think that is incorrect. We talked about constructive fraud. We talked about the express contract and the allowance. Let me talk a little bit about Exhibits 24 through 29. In any opinion, trial court uses the exact same language to deny 24 through 29 parts of exhibits. And these are the finished work, room by room basis, going to the daughter's bedroom, daughter's bathroom, master bedroom, master bathroom. And there's no disagreement or argument that there weren't plans. The designers posted the plans on the wall. And my client testified. They looked at the plans posted, gave them a price, went in and did the work. Okay? The trial court said, I'm not going to award any of this work because Marcia said she never received any of these bids. Okay? Look at the record. She never said that. She only talked about one invoice, that's Exhibit 24. She said, I don't think I received that bid. And then I brought up impeachment through her deposition testimony where she told me she received that bid. So, and then we put in evidence 25, 26, 27, 28, 29, all those parts of exhibits for each room. Marcia testified, did the work, testified it was in place, testified how we did the work. And Marcia never testified contrary to any of those. There's just no testimony for her on those issues. But with, I do see that the trial court said, well, if there was a bid, then the testimony supporting isn't specific enough or credible. I mean, I'm sort of synthesizing his ruling. And you're right, he took out and based his ruling. And he did it in two ways. The issue isn't really, you know, have us go over it, as you pointed out, with respect to the appellant's argument. It's not, like, let's have us re-weigh and re-sort. The real issue is, is it against the manifest way? And correct. That's why I started when I said, when I have these types of arguments, I don't ask the court to weigh it. I only make that argument when I know there's no evidence, contrary evidence, when it's just not there. And in this case, it's just not there. My client testified, and consistently with what Marcia testified, about the plans being posted and receiving the bids. And no one testified contrary to the fact. My client testified, did the work, reasonable price, according to the bids, and no one said that he didn't. So I'm saying, and then what the court made a little picnic here, well, look at the billing. It's different than the rest of this billing. Well, in my brief, I said all the billing is exactly the same. It's just totally consistent. So you have both those issues, and the court is wrong when it says it's not the same billing as the other bids. That Marcia, of course, I paid. It is the same, exactly the same. Secondly, it's not contradicted. And in this case, there's two witnesses, really. There's Marcia Porthet, my client. If she disagreed with something, she was there to raise it. I mean, she was there at the whole trial. So you have to assume that they're not, they're hearing this testimony that the work is done, and they're not contesting it. Isn't that also the mission in and of itself, I would say. So, and then again, you know, I mean, my client was pulled out of the subcontractor, made a contractor, and all these other people that are working for the owner, Brad Burkell, Al Kitchen, all the designers, none of them testified. And they were witnesses that were people who had been paid by the owner. And I think that too lends assumption that, hey, these people, she doesn't want to call these people to contradict what my client is saying, that they ordered this work as agents for her, that we performed this work. They were there. They saw it. Again, the assumption should be that my client's testimony is correct, and they're not going to contradict my client's testimony. That also brings up a point that I should raise regarding the mechanics, and why are we asking this court to give us the mechanics of the claim? The only difference is some interest. There's a mandatory interest allowable under the Mechanic-Lean Act. It would relate to invoices after, I believe, May 17, 2017, which would be essentially the 24 through 29 Barnes exhibits, plus the majority of the large summary invoice, which I believe is 2021. So I think that's it. I have a little time. I'd love to hear any questions that the court has. I know it was a little complicated record because there's all these invoices and stuff, but I tried to piece it together the best I could. I have no other questions. Let me go to the first one. All right. Thank you very much, counsel. Mr. Blank, you may proceed with your response. I'll try and go down the line, and I'll try to be as brief as possible. Counsel raised that this was wrong because the constructive fraud or whatever, the unclean hands was raised late or sought late. We cited the case that it was allowed in a post-trial situation, and we've also cited Section 2-616C where the code says you can amend at any time up to judgment based upon the proofs. So I'm not quite understanding that argument. Factually, initially, the general contractor, John Marshall, was hired, and John Marshall hired Barnes Electric as a subcontractor. That was the initial situation, and it went that way for a while, and then for whatever reasons they decided to do direct billing, I suppose because of this additional commission that's coming in for the general contractors. So, you know, counsel says there's a lot of invoices here. There are a lot of invoices here, and it's very difficult to follow. I will credit the trial court for trying to follow them as best he could because it gets very confusing. Counsel's talked about constructive fraud being on the basis of scienter, and, you know, I'm going to admit to the panel right now my lack of knowledge. I don't remember scienter being part of constructive fraud. I just don't. So I'm going to look it up myself. The manifesto of the evidence situation, there was just no evidence to support the $217,000. That was competent. Again, the trial court touched upon the credibility of Mr. Barnes and that Mr. Barnes had damaged his credibility by all his vacillating in testimony about invoice versus whatever and by the fact that he was pretty much constantly led, even though not always subjected to. But don't we have to evaluate the comments on the credibility of the plaintiff in light of the amount that the trial court discounted? I mean, it's not like he took out $1020. He took out a substantial amount of money that was claimed, and as counsel would argue, there's probably even more, based on his argument, that should have been in the plus pile. So what can you point to that would tell me that the court didn't properly go through those invoices and those bills, even considering that he found the plaintiff less than credible and was led? I mean, he virtually cut it in half if you use the four-plus-hundred-thousand figure. There are inconsistencies that the court pointed out, but then it relied upon some of those inconsistencies in its findings. It talked about how there was no testimony on the reasonableness of the number of hours and there was no testimony about the reasonableness on the hourly rate, yet it set an hourly rate and it set hours. That's just as much as the trial court tried to do it. But isn't that relative to finding no contract sufficient to support the lien? No, Your Honor. I believe that was relative to it going line by line down the invoice to determine that $217,000 was still owed and the rest was not owed. That's my recollection. But he also goes on to say, you know, this work was done. There was work done. Correct. And it hasn't been paid for. It's not what I understood him to say. It's not what the contractor claimed, but there was work done here, and then he sorted that bill. Well, I'll go back to the invoicing here. That's Defendant's Exhibit 39. First of all, in the main house, the general contractor, John Marshall, paid plaintiff $214,000. Defendant paid plaintiff another $169,000. The general contractor paid the plaintiff for garage work another $37,000, which came to a total of Is that part of this? Is it the garage or the detailed garage? Right. Yeah, the garage is not part of it. I'm just tallying up what's in the exhibit. She paid him a lot of money. She paid him a lot of money, and it comes to $421,000 was paid both by her and by the general. And then they come back with this lien three years later that says another $365,000, which would make the grand total $786,000. And the court found so many instances of double billing. It seems to me as though when counsel was talking about relative testimony witness versus witness, again, that's not something that this court can get into. The trial court observed the demeanor of the witness and credibility of the witnesses, and that can't be touched. But I wonder if maybe, no, no, strike that. Strike that. I won't try to put another thought in somebody else's brain or take it. Anyway, the failure of the proofs was a critical point here. It was witness versus witness testimony, and I think that's all that I have, unless there's any other questions. No, nothing further. Thank you. I thank you very much, counsel. I don't want to thank counsel for their arguments. We will recess. I will take this case under advisement. Is there an additional opportunity for counsel to repeat the argument? Oh, have we allowed it forever? Thank you so much. Can you clarify the performances? Please. Yeah, I'm sorry. No, you do get five minutes if you. I'll just clarify. I love those points. I'm not going to derate anything. Try not to. One thing I just want to point out, the trial court's opinion, and it bothers me a little bit, especially when the court infers fraud. There's no specifics. The court doesn't say, okay, look at this, and this is, in the record, this is where he admitted to fraud. This is where the court is very general, saying I found misbilling, I found double billing. And my client did admit to two invoices where he did work on it. Does this really relate to your appeal on the lien, the lien count? No, because I think my argument is more specific, and it's a de novo argument on the lien count. It's that the judge used the wrong legal standard when determining constructive fraud. I guess that one to stick in. Wasn't the real basis for him not giving you the lien, the fact that there was not a contract proved? And then the second, like, supplemental finding was, oh, and by the way, I don't like his billing. And you're right, he used the word constructive fraud, and I understand you don't like that. You want that analyzed. I get it. But what about the no contract proved? Isn't that a concern to you as well, as you appeal the ruling that there's no lien? Well, no, under Section 1 of the Tax Lien Act, it said the contract should be granted a lien if he has a contract with an owner, express or implied. Implied contracts? Yes, and you cite Barry Mogul for that. Correct. Which I have to admit I don't see as on point. Well, first of all, Barry Mogul says quantum merrilet is for when it's a contract implied in law. And you quote the case or you recite the case that you left that out. You did not quote it. You left that out of your recitation, what the case was about. But it would still be an implied contract, but it's a contract implied in law. It's a contract implied in law for which there is restitution. That's quantum merrilet. It's not a contract. It's not an implied contract, implied in fact, where maybe I come in, classic, point to it, go in the dentist's office, point to my tooth, and then he fixes, he or she fixes it, and then it's implied that I agreed to pay his fee. That's implied in fact. To put it in a nutshell, I think you've misread and maybe read too generously Barry Mogul. It doesn't mean that quantum merrilet, whenever it's granted, means a contract implied in fact sufficient to support a mechanics lien, and that's really what you're arguing. Thank you. Yeah, maybe I'll just clarify what I think about that one point. The statute doesn't say you've got to have a contract implied in fact to get a lien. It doesn't say you have to have a contract implied in law to get a lien. It just says a contract expressed or implied. There it is. It doesn't differentiate, and I can only assume that the lawmakers that drafted it knew there was two types. They could have picked one or the other, and they just said implied. So that's why I'm making the argument. Wouldn't we be the first to hold that if you find quantum merrilet, then you must grant the lien? I don't think you'd be the first because I haven't done that. Barry Mogul doesn't say that. Yeah, correct. But I haven't done extensive research to see if it's ever been done before. And you still argue it here. But because it does not differentiate in the statute between any implied contract. So it just says implied contract. All right. So if I have an implied contract, which I do, I read the statute saying I get a lien. And why not? Why not? It's work. And even the court says it would be very unjust to allow the owner to accept almost $250,000 of electrical work, which is lienable, and not pay for it. Well, if you're getting lienable work and you're not paying for it, isn't your remedy a lien? I mean, so why should you not be entitled to it if the work was performed under an implied contract? It just makes sense to me. It seems fair and just. That's why I make the argument, Your Honor. Out of respect. And counsel asked about scienter. Fraud, you always have to have scienter. You have to have intent to commit fraud. You can't just not know what you're doing and all of a sudden you commit fraud. You have to have some intent. You had to know. You had to know at the time you submitted the billing that it was blatantly wrong. There was no basis to submit either the line item or the total amount. Correct. And this goes to like a lot of liens are done by accounts receivable managers for companies, and they're just looking at their business records. And they're saying they're going to close it in 90 days, and they say we need to lien the job. So that's why I say scienter is an important part. Thank you so much. All right. Thank you, counsel. I'm sorry for the confusion. We will take the case under advisement and issue a ruling in due course. And we will recess until the 1130.